UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE

CIVIL ACTION NO. 04-202-DLB

DONNA RAMSEY                                                                                              PLAINTIFF

vs.                                    **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                                          DEFENDANT

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Donna Ramsey filed an application for supplemental security income (SSI) benefits on March 10, 1999. Her application was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on February 10, 2000. ALJ Charlie Andrus issued an unfavorable decision on April 26, 2001. When the Appeals Council denied Plaintiff's request for review by letter dated March 18, 2004, the ALJ's decision became the final decision of the Social Security Administration.

Plaintiff, who was 32 years old at the time of the hearing, has a high school education and alleges an inability to work beginning on Mach 17, 1999 due to low back, neck, and shoulder pain; lack of grip strength in her hands; muscle spasms; numbness in her entire body; nerves; illiteracy; chronic headaches, pain, and fatigue; low blood pressure;

1

varicose veins; and arthritis in her feet and hips.  At the hearing before the ALJ, Plaintiff also indicated that her appetite is suppressed due to her pain; she can only drive short distances, stand for approximately 10-15 minutes without interruption, and sit for 20-30 minutes; and she cries easily, and has difficulty remembering and being around crowds.

Plaintiff filed the instant action on May 13, 2004.  The matter has culminated in cross motions for summary judgment, which are now ripe for adjudication.

## II.  DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past

relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 17, 1999, her alleged onset date.  (Tr. 21).  At Steps 2 and 3, the ALJ found that Plaintiff's back and neck pathologies and affective disorder constitute severe impairments, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 21-22).  At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform the exertional requirements of light work.  (Tr. 23).  The ALJ also found that Plaintiff's capacity for light work is diminished by the following limitations:

> Limited to simple routine work without significant public contact or close work with co-workers; no work in dust/fumes; and needs the option to sit/stand at one-half hour intervals.  In addition, the claimant is limited to standing and/or walking two to four hours in an eight hour day; pushing and/or pulling in upper extremities; limited in movement of the lumbosacral spine; should only occasionally climb, balance, kneel, crouch, crawl; limited reaching in all directions; and should avoid vibration (Exhibit B-16F).  Further, the claimant has a fair ability to: deal with work stresses; and understand, remember and carry out complex job instructions.  She has a good ability to: follow work rules; relate to co-workers; deal with the public; use judgment; interact with supervisors; function independently; maintain/ attention; concentration; understand, remember and carry out detailed, but not complex job instructions; understand, remember and carry out simple job instructions, maintain personal appearance; behave in a [sic] emotionally stable manner; relate predictably in social situations; and demonstrate reliability (Exhibit B-17F).

3

(*Id*.). Based on this assessment, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a nurse's aid. (Tr. 23-24). At Step 5, however, the ALJ found that Plaintiff retains the capacity to make an adjustment to other work that exists in significant numbers in the national economy. (Tr. 24). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.     Analysis**

In this appeal, Plaintiff's sole contention of error is that the ALJ erred by relying on her numeric grade level (high school education), when her Wide Range Achievement Test-Revision 3 (WRAT-R) results reveal that she reads at an eighth grade level, spells at a sixth grade level, and can compute math at a fourth grade level. (Tr. 332). Plaintiff argues, albeit impliedly, that her level of formal education is unrepresentative of her actual educational abilities. She further asserts that the ALJ was required to address and resolve these inconsistencies at Step 5 of the sequential evaluation.

Initially, the Court notes that Plaintiff has failed to offer any evidence regarding the impact of her deficient reading, spelling, or math skills on her ability to perform the work cited by the VE. Instead, she alleges generally that "her educational level does not appear to have been correctly considered" in light of 20 C.F.R. 416.964(b), which states that a claimant's numeric grade level will be used to determine his/her educational abilities unless there is other evidence to contradict it. Plaintiff was examined by consultative examiner Dr. William Rigby on April 13, 2000. Dr. Rigby noted that "Intellectually, [Plaintiff] appeared slightly below average...Educationally, [she] says that she went to school as far as high school graduation and then she attended nurses training...." (Tr. 330-31). Dr. Rigby's

4

report also indicated that, according to her WRAT-R results, Plaintiff reads at an eighth grade level, spells at a sixth grade level, and can do arithmetic at a fourth grade level. (Tr. 332). These scores were the result of adequate cooperation and effort on Plaintiff's part. (Tr. 332).

When evaluating a claimant's education as a vocational factor, an ALJ may properly use her numeric grade level to determine her educational abilities only if contradictory evidence does not exist. *See Skinner v. Sec'y of Health and Human Servs.*, 902 F.2d 447, 450-51 (6th Cir. 1990). The Sixth Circuit elaborated on this standard in *Colwell v. Chater*, No. 95-6179, 1996 WL 557773, at *3 (6th Cir. Sept. 30, 1996) (Table decision, text available on Westlaw). There, the plaintiff argued that the ALJ erred by relying on his level of education completed (tenth grade), when it was uncontroverted that he had fifth grade reading skills and third grade mathematical skills. *Id*. The Sixth Circuit disagreed, noting that the plaintiff was able to maintain steady employment and function in a working environment. *Id*. More importantly, however, the court concluded that the ALJ's question to the VE, when viewed in its entirety, adequately portrayed the plaintiff's diminished mental capabilities. *Id*. The ALJ described an individual who had a tenth grade education, was literate, but marginally educated, and was able to "read at least a simple message minimally." *Id*. When viewed as a whole, the court held that the ALJ's hypothetical sufficiently set forth the plaintiff's mental limitations. *Id*.

The Court cannot say the same about the ALJ's question to the VE in the instant case. Here, the ALJ assumed:

> [A]n individual who is limited to light work but is limited to simple, routine work without significant public contact or close work with co-workers...the person cannot work in excessive amounts of dust or fumes and would need to have

5

the option to sit or stand at one half hour intervals....

(Tr. 432-33). To that, the ALJ added vocational factors, including Plaintiff's "age, education and work history." (Tr. 433). Based on those factors, the VE opined that there is a significant number of jobs in the regional and national economies that Plaintiff could perform. (Tr. 433).

The Court concludes that the ALJ's hypothetical question was deficient for two reasons. First, the term "education" is ambiguous given the specific facts of this case. The Court presumes that the ALJ asked the VE to assume an individual with a high school education. However, on remand, an express instruction to that effect would be beneficial. Second, and more importantly, there is no indication that the ALJ considered, much less discussed, Plaintiff's WRAT-R results. The ALJ's failure to do so invariably casts doubt on the VE's response to his hypothetical question.

Although Plaintiff's past relevant work as a nurse's aid indicates that she is capable of performing intelligence-based tasks, the Court concludes that this case is distinguishable from *Colwell* because the ALJ's hypothetical question to the VE did not accurately portray Plaintiff's deficient mental capabilities. Instead, the ALJ improperly used Plaintiff's numeric grade level completed to determine her actual educational abilities when contradictory evidence existed. Therefore, the Court remands the case for the specific purpose of determining what effect, if any, Plaintiff's low WRAT-R test scores have on her ability to perform the work cited by the VE.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported

by substantial evidence and is hereby **REVERSED,** with this action **REMANDED.**

      **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **DENIED.**

      **IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **GRANTED.**

      A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

      Dated this 26th day of April, 2005.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-04-202-RamseyMOO.wpd